# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RAMONA I. MORGAN,              )

               **Petitioner,**     )

                                     )

                                     )       **CIVIL ACTION**

**v.**                                   )

                                     )       **No. 15-3241-KHV**

STATE OF KANSAS, et al.,      )

                                     )

               **Respondents.**   )

_____)

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, pro se petitioner Ramona I. Morgan seeks a writ of habeas corpus, claiming various constitutional violations arising out of her state court convictions for second degree murder and aggravated battery. Petition For Writ Of Habeas Corpus (Doc. #1) filed October 16, 2015. For the reasons stated below, the Court denies the petition.

### Factual Background

The Kansas Court of Appeals set out in detail the evidence at trial, see State v. Morgan, 231 P.3d 587 (May 28, 2010). The Court briefly summarizes the evidence as follows:

In September of 2007, a work crew was resurfacing a portion of a highway in Douglas County, Kansas. Only one lane of traffic was open to vehicles. Flaggers directed traffic at each end of the marked construction zone, and a pilot car led the vehicles in the open lane.

On the morning of September 11, 2007, several workers saw a dark-colored truck driving northbound through the construction zone with two female occupants. They noticed that the truck was not following a pilot car and was traveling very fast. Two crew members motioned for the truck to slow down, but it accelerated. The truck swerved towards crew foreman Rollin Jensen, who jumped behind a resurfacing machine and threw a cup of coffee at the truck.

About 30 to 45 minutes later, the crew saw the same truck driving southbound in the "safe lane" where workers were operating machinery. Amanda Hopper was working as a flagger at the north end of the zone, and saw the truck accelerate as it approached. She tried to stop the truck by hitting the front passenger side headlight with her flagger paddle, but the truck continued to accelerate through the safe lane. Crew member Oscar Anaya-Bautista attempted to slow the truck by signaling to the driver, but the truck accelerated and drove past him. Another crew member, Curtis Delzell, also tried to get the driver's attention by waving his arms, but the truck continued to accelerate through the zone. The truck struck Delzell, injuring his left foot and leg. The truck then hit two of the crew members, Rolland Griffith and Tyrone Korte, who both died from their injuries.

Shortly after the incident, Trooper Todd Brooks received a call for assistance and a description of the vehicle involved. He saw a truck matching the description and pursued it with emergency lights and siren turned on. Brooks pursued the truck for 25 miles at speeds up to 95 miles an hour. He eventually stopped the truck after law enforcement officers placed stop sticks on the road. Brooks identified the driver as Ramona Morgan and the passenger as Morgan's daughter, Sabrina Morgan.

The Douglas County district attorney charged Ramona Morgan with two counts of reckless second degree murder for the deaths of Griffith and Korte, in violation of Kan. Stat. Ann. § 21-3402 (repealed) and one count of reckless aggravated battery for the injuries to Delzell, in violation of Kan. Stat. Ann. § 21-3414 (repealed).[1]

---

[1]     In 2010, the Kansas legislature recodified the Kansas Criminal Code and repealed the prior code, including K.S.A. §§ 21-3402 and 21-3414. See Laws 2010, ch. 136, §307, eff. July 1, 2011.

In September of 2008, the state court held a jury trial. The government presented testimony by Trooper Brooks and surviving construction crew members who had witnessed the incident. Forensic experts testified that blood and other material collected from the front of Morgan's truck matched the DNA of Griffith and Korte. The government also introduced evidence that the truck computer indicated that the truck was traveling 51 miles per hour when it struck the workers. Sabrina briefly testified under subpoena during the prosecution's case and acknowledged being an unwilling witness. In very general terms, Sabrina testified about the events that Morgan later testified about.[2]

Morgan testified at trial as follows: In August of 2007, she had sold her farm in Chewala, Washington. On September 7, she and her daughter Sabrina left Washington to drive to Missouri to purchase a small farm property near Eldridge, Missouri. When they arrived at the Missouri property on September 10, Morgan saw the property for about five minutes, decided that it was unacceptable, and left. She decided to travel back to Washington to live with her sister while she looked for another property. After leaving the Missouri property, she saw four or five vehicles on the side of the road with people talking on cell phones and pointing at her. Some of these vehicles began to chase her, or tried to stop her or run her off the road. One of the drivers held a gun out the window of his SUV and shot at her truck. When she got to Buffalo, Missouri, Morgan called 911 and reported these incidents.

---

[2]        As the Kansas Court of Appeals stated in ruling on Morgan's appeal of her state habeas petition, "although Sabrina's demeanor in testifying is difficult to assess from the transcript, comments in the record from both the prosecutor and Morgan's trial lawyer suggest they considered Sabrina to be a weak, unpersuasive witness." See Morgan v. State, 336 P.3d 922 (Table), 2014 WL 5609935, at *2 (Kan. App. Oct. 24, 2014).

Over the next few days, Morgan experienced several other unusual events which caused her to fear for her safety and that of Sabrina. Early on the morning of September 11, 2007, she checked out of a hotel in Gardner, Kansas just two hours after she had checked in because she was afraid that the Missouri gang had followed her to the hotel. She became lost as she tried to find the interstate highway to head back to Washington. She approached the construction zone in Douglas County and was coming to a stop when a flagger started hitting her truck with a pole. Someone then threw gasoline at her truck and started pelting the truck with objects. She was trying to escape and was extremely scared, so she drove quickly through the construction zone because she believed that the people in the zone were the same people who had chased her truck in Missouri. She struck what she thought were grey and orange barricades, but she did not hit any people with her truck.

After that, she saw a car close behind her. Sabrina said that it looked like a police car, but Morgan was scared so she did not stop. Morgan said that the car did not have a light bar on top, like police cruisers do. Sabrina placed a cell phone call to 911 to try to confirm that a law enforcement officer was behind them. Morgan stopped the pickup truck when she approached a roadblock and could readily identify a police officer there.

Morgan's counsel did not introduce evidence to corroborate testimony about the Missouri gang by Morgan and Sabrina.

On September 9, 2008, a jury found Morgan guilty of two counts of second degree murder and one count of aggravated battery. On November 12, 2008, the trial court sentenced Morgan to 315 months in prison.

**Procedural Background**

Morgan filed a direct appeal of her conviction and sentence in the Kansas Court of Appeals. She asserted that the district court erred in (1) admitting footage of Morgan's statements to the news media; (2) excluding evidence that a material witness (Hopper) was biased; (3) responding to jury questions regarding instructions on "state of mind" and "extreme indifference to human life;" and (4) including prior convictions in Morgan's criminal history score. She also asserted cumulative error. The Court of Appeals found only harmless error and upheld Morgan's convictions and sentence. State v. Morgan, No. 101769, 2010 WL 2245604 (Kan. App. May 28, 2010), rev. denied, 290 Kan. 1101 (2010).

Morgan then filed a motion for post-conviction relief under the Kansas habeas corpus statute, Kan. Stat. Ann. § 60-1507, alleging ineffective assistance of trial and appellate counsel. In August of 2012, the district court held an evidentiary hearing on the motion and issued a lengthy written decision rejecting Morgan's claims. See State v. Morgan, No. 11-C-525, Douglas Cty. Kan. Dist. Court, Nov. 7, 2012 (unpublished). Morgan appealed, setting forth three arguments. First, she argued that her trial lawyer was ineffective because he did not object to admission of the news report on grounds that the prejudicial impact of showing Morgan in prison clothes and handcuffed outweighed the probative value of her statements. Second, she argued that trial counsel was ineffective when he failed to offer a recording of the 911 call which Sabrina made as Trooper Brooks tried to stop their pickup truck as it drove away from the construction zone. Third, she argued that appellate counsel was ineffective because he did not assert that the prosecutor's repeated use of the phrase "we know" to introduce various representations during closing argument constituted prosecutorial misconduct. The Kansas Court of Appeals denied post-conviction relief.

On October 16, 2015, in this Court, Morgan filed a <u>Petition For Writ Of Habeas Corpus</u> (Doc. #1) asserting 12 grounds for relief. On March 30, 2016, the Court issued an <u>Order To Show Cause</u> (Doc. #6) which directed petitioner to show that she had exhausted state court remedies on all 12 grounds raised in her petition. The Court stated that if petitioner had not exhausted all 12 claims, she could dismiss her unexhausted claims and proceed on the exhausted claims, or the Court would dismiss the entire petition as mixed. Doc. #4 at 1; <u>see</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 273 (2005) (federal district courts may not adjudicate mixed petitions for habeas corpus). Petitioner responded that she chose to continue with six exhausted claims and to dismiss six unexhausted claims. <u>See</u> <u>Motion To Continue Petition</u> (Doc. #5) filed April 6, 2016 at 1; <u>Response To Order</u> (Doc. #8) filed May 13, 2016 at 1-2.

## **Standards For Habeas Petitions Under 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in relevant part at 28 U.S.C. § 2254, governs the Court's review. Under Section 2254, the Court may not issue a writ of habeas corpus with respect to any claim that the state court adjudicated on the merits unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1), (2); <u>see</u> <u>Charlton v. Franklin</u>, 503 F.3d 1112, 1114-15 (10th Cir. 2007).

Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if (1) the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) the state court decided the case differently than the Supreme Court on a set

of materially indistinguishable facts. Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams v. Taylor, 529 U.S. 362, 407-08 (2000). The Court may not issue a writ simply because it concludes, in its independent judgment, that the state court applied clearly established federal law erroneously or incorrectly; rather, the application must have been objectively unreasonable. See id. at 409-11.

The Court presumes "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. That is, the "deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). Ultimately, this Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Frost v. Pryor, 749 F.3d 1212, 1222 (10th Cir. 2014).

A state prisoner may not obtain federal habeas relief unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Tenth Circuit Court of Appeals recently explained the doctrine of procedural default in detail. See Griffin v. Scnurr, 640 F. App'x 710, 716-17 (10th Cir. 2016). Four aspects of the exhaustion requirement contribute to the doctrine of procedural default. Id. at 716. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." Id. To do so, the prisoner must seek discretionary review of the constitutional issue she wishes to pursue under Section 2254 in the state's highest court – here, the Kansas Supreme Court. Id. Second, the prisoner must "fairly present" her claim in each appropriate state court, thus alerting that court to the federal nature of the claim. Id. (prisoner must present "substance" of claim to state courts so as to put courts on notice of federal constitutional claim); see Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012). Third, procedural default may arise from anticipatory procedural bar. Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies. But if the court to which petitioner must present her claims to meet the exhaustion requirement would now find those claims procedurally barred, "there is a procedural default for the purposes of federal habeas review." Griffin, 640 F. App'x at 716. Fourth, federal courts do not address issues that petitioner defaulted in state court on an independent and adequate state procedural ground, unless petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." Id. at 717 (citing Cummings v. Sirmons, 506 F.3d 1211, 1224 (10th Cir. 2007)).

## Analysis

Petitioner asserts six grounds for habeas corpus relief: (1) the trial court improperly admitted a video of a television newscast which showed petitioner shackled and dressed in an orange jumpsuit; (2) the trial court improperly excluded from evidence a recording of Sabrina's 911 call; (3) prosecutorial misconduct during closing argument; (4) ineffective assistance of trial counsel;[3]

---

[3]     Petitioner alleges that trial counsel was ineffective because he failed to (1) gain admission of a 911 call; (2) object to prosecutorial misconduct during closing argument; (3) request
(continued...)

(5) the trial court improperly relied on prior convictions in calculating her criminal history score and (6) admission of perjured testimony by Amanda Hopper.

## I.    Admission of News Video

Evidence at trial included a news video of Morgan speaking to the press while shackled and dressed in an orange jumpsuit. Petitioner claims that admission of this evidence violated her due process right to a fair trial. Respondents assert that petitioner procedurally defaulted this claim. At trial, petitioner only objected to the news video on grounds that it was hearsay. On appeal, petitioner asserted that the video violated her due process right to a fair trial, but the Kansas Court of Appeals found that she had procedurally defaulted the due process issue because she did not raise it at trial. Morgan, 2010 WL 2245604, at *3 (noting that trial objections to video were matters of purely state evidentiary law). Respondents argue that this procedural default represents an independent and adequate state ground barring federal review. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).

A state rule "is independent if it relies on state law rather than federal law and is adequate if it is regularly followed and applied evenhandedly." Zimmer v. McKune, 87 F. Supp.2d 1153, 1158 (D. Kan. 2000). The independent requirement is met if the last court that rendered a judgment in the case clearly and expressly stated that its decision rested upon a state procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989). The adequate requirement is met if the state procedural rule is a "firmly established and regularly followed state practice" and applied to all similar claims in an

---

[3](...continued)
a jury instruction on involuntary manslaughter as a lesser included offense; (4) object to admission of the news video which showed petitioner in an orange prison jumpsuit and shackles; (5) request a jury instruction on the defense of compulsion and (6) inform petitioner that he was "on drugs."

evenhanded manner in the majority of cases.  <u>Messer v. Roberts</u>, 74 F.3d 1009, 1015 (10th Cir. 1996).

Here, the Kansas Court of Appeals clearly and expressly stated that petitioner's claim on appeal was barred because state procedural rules required a timely and specific objection, which petitioner did not make.  <u>Morgan</u>, 2010 WL 2245604 at *3.  This is a firmly established and regularly followed rule which Kansas courts apply to similar claims in an evenhanded manner in the majority of cases.  <u>See, e.g.</u> <u>State v. Breedlove</u>, 295 Kan. 481, 490, 286 P.3d 1123, 1130 (2012) (party may not object on one ground at trial and then argue another on appeal); <u>State v. Sharp</u>, 289 Kan. 72, 104, 210 P.3d 590, 610 (2009).  Thus, petitioner's claim is defaulted by an independent and adequate state procedural bar, and this Court cannot consider it unless petitioner can show cause for her default and actual prejudice, or demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89, 496 (1986).

Petitioner has not shown cause for her default because she does not point to an external factor that prevented her from raising a due process claim regarding admission of the video.  <u>Coleman</u>, 501 U.S. at 753.  To the extent petitioner asserts that  counsel's failure to raise the due process objection constitutes cause, she must show that counsel was constitutionally ineffective under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  As set forth in a separate discussion below, she has not shown ineffective assistance of counsel, and thus cannot show cause for her default.

Even if petitioner could show cause, she cannot show actual prejudice. At trial, the government presented overwhelming evidence of guilt: a number of witnesses testified that petitioner drove her truck at a high speed through the construction zone in which workers were

present.  Petitioner did not dispute that testimony.  The Court finds no reasonable probability that

the jury would have returned a different verdict if the video had not been admitted.

Petitioner also cannot show a miscarriage of justice.  Carrier, 477 U.S. at 496-97.  To show

a miscarriage of justice petitioner must demonstrate that the error complained of probably resulted

in the conviction of an innocent person.  Bousley v. United States, 523 U.S. 614, 623 (1998).  Given

the extremely strong evidence of guilt, petitioner cannot meet this standard.

## II.    Exclusion Of 911 Call

The trial court excluded evidence of Sabrina's 911 call, and petitioner asserts that this ruling

violated her due process right to a fair trial.  At the state court level, petitioner only raised this issue

as part of her claim of ineffective assistance of counsel.  Therefore, to the extent petitioner seeks to

raise it as an independent constitutional claim, it is not exhausted and is procedurally defaulted.  See

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (failure to present claims to state courts to allow

them fair opportunity to act on claims defaults claims for federal habeas purposes).  To the extent

that petitioner raises the exclusion of the 911 call as part of her ineffective assistance of counsel

claim, the Court addresses it below.

## III.   Prosecutorial Misconduct

Petitioner asserts that prosecutorial misconduct during closing argument violated her due

process right to a fair trial.  Specifically, she complains that the prosecutor repeatedly used the

phrase "we know" to introduce various representations, and that the prosecutor thereby engaged in

misconduct.  At the state court level, petitioner only raised this issue as part of her claim of

ineffective assistance of counsel.  Thus, to the extent that she attempts to raise the merits of the

prosecutorial misconduct claim as an independent ground for federal habeas relief, it has been

procedurally defaulted.  See id.  To the extent that petitioner raises the prosecutorial misconduct claim as part of her ineffective assistance of counsel claim, the Court addresses it below.

## IV.    Ineffective Assistance of Counsel

Petitioner asserts that trial counsel "made numerous errors during trial which resulted in the outcome of trial."  See Petition (Doc. #1) at 9.  Specifically, she asserts that trial counsel failed to (1) gain admission of the 911 call; (2) object to prosecutorial misconduct during closing argument; (3) request a jury instruction on involuntary manslaughter as a lesser included offense; (4) object to admission of the news video which showed petitioner in an orange prison jumpsuit and shackles; (5) request a jury instruction on the defense of compulsion and (6) inform petitioner that he was "on drugs."

The Court reviews petitioner's claims of ineffective assistance of counsel under the familiar framework laid out in Strickland, 466 U.S. at 687-88.  Petitioner must show both that her counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense."  Id.; accord Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010).

This Court's review of counsel's performance is "highly deferential."  Hooks, 606 F.3d at 723. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011).  "To be deficient, the performance must be outside the wide range of professionally competent assistance.  In other words, it must have been completely unreasonable, not merely wrong."  Hooks, 606 F.3d at 723 (citations and internal quotation marks omitted).  The Supreme Court requires the Court to make "every effort . . . to eliminate the distorting effects of

hindsight" by indulging in a strong presumption that counsel acted reasonably. <u>Strickland</u>, 466 U.S. at 689. Petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy. <u>Byrd</u>, 645 F.3d at 1168.

Furthermore, in a Section 2254 proceeding, petitioner faces an even greater challenge, because this Court defers not only to the attorney's decision in how to best represent a client, but also to the state court determination that counsel's performance was not deficient. <u>Id.</u> Thus, review of a habeas claim of ineffective assistance of counsel is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). This Court may grant habeas relief on an ineffective assistance claim only if the state court determination on the issue involved "an unreasonable application" of clearly established federal law. <u>See</u> <u>Frost</u>, 749 F.3d at 1223.

A.    <u>Failure to Introduce 911 Call</u>

In the state habeas proceeding, the district court applied the <u>Strickland</u> analysis and found that trial counsel's failure to introduce evidence of the 911 recording was objectively unreasonable, but that the error did not prejudice petitioner. In dicta on appeal, the Kansas Court of Appeals agreed with the district court's finding that counsel's performance was objectively unreasonable but noted that petitioner did not include the recording of the 911 call in the record on appeal, and thus the appellate court could not make any "reasoned assessment" of potential or actual prejudice. <u>Morgan</u>, 2014 WL 5609935 at *8. Thus, in the state habeas appeal, petitioner procedurally defaulted the prejudice prong of the <u>Strickland</u> analysis, and also defaulted it for federal habeas purposes.[4]

_____

[4]    Even if the Kansas Court of Appeals had reached the prejudice prong, respondents point out that even without the 911 recording, the defense was able to elicit testimony about the call and further, in light of the other evidence presented by the State and the defense, evidence of the actual recording would not have changed the outcome of the trial. This was a reasonable

(continued...)

B.    Failure To Object To Prosecutorial Misconduct

Petitioner next claims that trial counsel provided ineffective assistance when he failed to object to alleged prosecutorial misconduct during closing argument. In her state habeas proceedings, she presented this as a claim of ineffective assistance of *appellate* counsel for not raising prosecutorial misconduct on appeal.[5]  Petitioner thus did not exhaust the ineffective assistance of trial counsel claim, and the Kansas courts would now find such a claim procedurally barred.  See Bland, 459 F.3d at 1012.  Moreover, petitioner has not demonstrated cause or prejudice or shown that this Court's failure to consider this claim will result in a fundamental miscarriage of justice.

C.    Failure To Object To Admission Of News Video

Petitioner claims that trial counsel was ineffective for failing to properly object to the admission of the news video of petitioner.  The video showed petitioner in shackles and prison clothing as she answered a reporter's questions while officers escorted her into the courthouse.  Counsel objected to the video on hearsay grounds, rather than on grounds of undue prejudice.  The trial court overruled the hearsay objection.  On appeal, the Kansas Court of Appeals found that petitioner had defaulted a due process challenge.

---

[4](...continued)
determination and a reasonable application of Strickland.  Under the deferential AEDPA standard, reasonable jurists could agree with the state district court and therefore, its decision must stand.

[5]    The Kansas Court of Appeals found that while some of the prosecutor's comments were improper, they did not deprive petitioner of a fair trial.  Morgan, 2014 WL 5609935, at *9-12 (based on clear evidence against petitioner and absence of solid defense, "near certainty" that improper argument could not have caused jurors to convict).  Because the claim would not have succeeded on appeal, the Kansas Court of Appeals held that petitioner's appellate counsel was not ineffective.  Id. at *12 (duty of adequate representation does not require lawyer to assert unmeritorious claims)

In her state habeas petition, petitioner asserted that her counsel was ineffective for failing to object to the video on due process grounds. The trial court found that counsel's performance was deficient, but that petitioner could not show prejudice because of the overwhelming evidence against her. On collateral appeal, the Kansas Court of Appeals expressed doubt that a due process challenge to admission of the video would have succeeded, and found that even if counsel made a mistake, it "quite arguably did not fall below the level of advocacy required by the Sixth Amendment." Morgan, 2014 WL 5609935, at *6.[6] The Kansas Court of Appeals also noted that petitioner bore significant responsibility for the video: had she not stopped to answer the reporter's questions, there would have been no relevant video to admit. Id. Given the circumstances, it is not reasonably clear that a due process challenge would have succeeded at trial, so counsel could have reasonably concluded that such a challenge would fail and declined to raise it. See Byrd, 645 F.3d at 1168. Thus, it is not obvious that objectively reasonable counsel would have raised such a challenge.

Even if counsel's performance was deficient, petitioner cannot show prejudice. The Kansas Court of Appeals concluded that "[t]he evidence against [petitioner] was overwhelming in this case, especially considering that the reckless second-degree murder charges did not require the State to prove intentional killings but rather deaths occurring 'under circumstances manifesting extreme indifference to the value of human life.'" Morgan, 2014 WL 5609935, at *6 (quoting Kan. Stat. Ann. § 21-3402(b)). Multiple witnesses testified that petitioner drove her truck at a high speed through the construction zone in which workers were present. Petitioner did not dispute that testimony; her defense was that she did what she did because she was in fear for her life from some

---

[6]     The Kansas Court of Appeals correctly noted that the situation differed from cases in which a criminal defendant was forced to appear shackled and in prison garb *in court*. Morgan, 2014 WL 5609935, at *5.

mysterious road gang. The Kansas Court of Appeals reasonably found no reasonable probability

that the jury would have returned a different verdict if the video had not been admitted. Id. at *6-7.

> D. Defaulted Claims Of Ineffective Assistance of Counsel

Respondents assert that petitioner has defaulted the following claims of ineffective

assistance: (1) failure to request a jury instruction on involuntary manslaughter; (2) failure to request

an instruction on the defense of compulsion; and (3) failure to inform petitioner that counsel was "on

drugs."[7] Petitioner did not raise any of these claims in her collateral appeal to the Kansas Court of

Appeals, and therefore, they are unexhausted. Further, under Kansas state procedural rules, the

state court to which petitioner must present her claims in order to meet the exhaustion requirement

would now find these claims procedurally barred. Thus, the claims are procedurally defaulted for

---

[7]     Petitioner alleges that her attorney, William Rork, was "on drugs" and that his performance was so affected as to rise to a level of ineffective assistance of counsel. Rork had surgery before the start of trial, and during trial he took pain medicine (including morphine) and other prescription drugs to treat cancer. Petitioner alleges that as a result, Rork (1) had drool on his face during voir dire; (2) used profanity after a disagreement with a prosecutor and (3) seemed to be performing below his normal skill level.

Petitioner raised these issues at the Section 60-1507 hearing in the District Court of Douglas County, Kansas. Rork testified that his medication did not affect his ability to do his job. The Kansas district court noted that it did not need to determine whether Rork was performing below *his* normal skill level or whether his medical condition was the cause of any alleged deficiency. The court stated that the only relevant inquiry was whether his performance was ineffective under Strickland. See Morgan v. State, 11-C-525, Douglas County District Court, Nov. 7, 2012 (unpublished).

Even if this Court were to reach the merits of this issue, petitioner has pointed to no evidence that Rork's performance fell beneath a standard of reasonably effective assistance. See Muniz v. Smith, 647 F.3d 619, 624-625 (6th Cir. 2011) (falling asleep for brief periods at trial and being addicted to cocaine not enough to show constitutional deprivation of counsel); see also Burdine v. Johnson, 262 F.3d 336, 349 (5th Cir. 2001) ("Even the intoxicated attorney exercises judgment, though perhaps impaired, on behalf of his client at all times during a trial."). Further, petitioner has offered no evidence to suggest that but for the conduct she alleges, the result of her trial would have been different.

purposes of federal habeas review. See Bland, 459 F.3d at 1012. Petitioner has not shown an external cause for her failure to raise these claims, and has not shown prejudice. Further, she has not demonstrated a miscarriage of justice if this Court were to deny review of such claims.

## V.       Testimony By Amanda Hopper

Petitioner claims that the trial court denied her due process right to a fair trial when it allowed perjured testimony by Amanda Hopper. Petitioner did not raise this issue in the state courts. This claim is unexhausted and is now procedurally defaulted, and therefore barred from federal habeas review. See Bland, 459 F.3d at 1012.

On direct appeal, however, petitioner also argued that the trial court erred in prohibiting her counsel from asking Hopper about Hopper's civil suit against petitioner's insurance company, as evidence of bias. To the extent petitioner asserts that this ruling violated due process, this claim does not warrant federal habeas relief. See Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (Sixth Amendment Confrontation Clause guarantees criminal defendant right to cross-examine witnesses but judges retain wide latitude to impose reasonable limits on cross-examination). Evidence about Hopper's lawsuit was only marginally relevant and would likely have confused the issues. Therefore, the trial court's decision to exclude the evidence was a reasonable application of discretion and was not inconsistent with United States Supreme Court precedent. Moreover, as the Kansas Court of Appeals found, even if the trial court erred, the error was harmless. Morgan, 2010 WL 2245604 at *4 ("Hopper's testimony was not critical to the State's case, other witnesses testified to nearly identical observations, and the State's case against [Petitioner] was quite strong").

## VI.  Use Of Prior Conviction To Enhance Sentence

Finally, petitioner asserts that her enhanced sentence violates the constitution.[8]  She appears to assert that use of her prior convictions to enhance her sentence violated Apprendi v. New Jersey, 530 U.S. 466, 2000).  In Apprendi and Blakely v. Washington, 542 U.S. 296, 301 (2004), the Supreme Court clearly held that prior convictions are an exception to the general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  On federal habeas review, the Tenth Circuit has rejected claims that the State's use of prior convictions for sentencing purposes violates Apprendi.  Hunter v. Werholtz, 505 F.3d 1080, 1081-82 (10th Cir. 2007).

### Conclusion

For the reasons discussed above, the Court concludes that Morgan's habeas petition does not establish any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Further, the record conclusively shows that Morgan is not entitled to relief.  Accordingly, no evidentiary hearing is required.  See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998) (no hearing required where factual matters raised by § 2255 petition may be resolved on record).

---

[8]    In her argument on this point, petitioner does not present any discussion about her sentence, but instead complains about the amount of bail. Petitioner's complaint about her bail is both procedurally defaulted, as it was not presented to the state appellate courts, and moot.  Murphy v. Hunt, 455 U.S. 478, 481 (1982) (claims related to pretrial bail become moot once defendant convicted).

**Certificate Of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court indicates "which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

The Court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the Court's ruling resulting in the dismissal of this action is debatable or incorrect. The record does not suggest that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that Ramona I. Morgan's Petition For Writ Of Habeas Corpus (Doc. #1) filed October 16, 2015 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2254 petition is **DENIED**.

Dated this 12th day of July, 2017 at Kansas City, Kansas.

s/ Kathyrn H. Vratil
KATHRYN H. VRATIL
United States District Court